IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGEL FERNANDEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>GREAT LAKES EDUCATIONAL LOAN SERVICES, INC.,<br><br>        Defendant | CIVIL ACTION<br>NO. 19-144 |

### MEMORANDUM OPINION

**Schmehl, J.**  */s/JLS*                                                                                                                            August 30, 2021

### I.     INTRODUCTION

      Plaintiff, Angel Fernandez ("Plaintiff" or "Fernandez"), brings this suit against Defendant, Great Lakes Educational Loan Services, Inc., ("Great Lakes") for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b) by reporting inaccurate and misleading information on his credit report and by failing to conduct a good faith investigation into the allegedly inaccurate reporting.[1] Before the Court is the Motion for Summary Judgment of Great Lakes. For the reasons discussed more fully below, Defendant's motion will be granted and this case will be dismissed.

### II.     LEGAL STANDARD

      Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. Proc. 56(c). "A motion for summary judgment will not be defeated by 'the mere existence' of

---

[1] The Complaint also named TransUnion, LLC, and United States Department of Education as Defendants, although both are no longer parties to this case.

some disputed facts but will be denied when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. and N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (*citing Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

### III.   FACTUAL BACKGROUND

On or about December 1, 2011, Plaintiff executed a federal master promissory note to obtain Direct Stafford Loans to attend Everest University – Melbourne (the "Master Promissory Note"). Joint Statement of Material Facts ("JSOF") ¶ 1. Section 16 of the Master Promissory Note requires Plaintiff to "pay [the Department of Education] all loan amounts disbursed under the terms of this [Master Promissory Note]." *Id.* at ¶ 2. The Department of Education ("DE") assigned Plaintiff's loans to Great Lakes for Servicing (the "Account"). *Id.* at ¶ 3.

Great Lakes is a "furnisher" as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* JSOF at ¶ 4.

Plaintiff's Account entered repayment with Great Lakes on or about June 1, 2013. *Id.* at ¶ 5. During the time that Great Lakes serviced Plaintiff's Account, Plaintiff never made a payment to Great Lakes. *Id.* at ¶ 6. After Plaintiff's loan first entered repayment, Plaintiff's loan was never in "Repayment" status for more than two consecutive months. *Id.* at ¶ 7.

As of April 2017, Plaintiff's Account was 90 days delinquent and as of May 2017, it was 120 days delinquent. *Id.* at ¶¶ 8-9. Between April 2017, when Plaintiff admitted that he was 90 days delinquent, and January 23, 2018, the date that Plaintiff's Account was transferred to Debt Management and Collection System ("DMCS"), Plaintiff made no payments to Great Lakes. *Id.* at ¶ 10.

On or about January 23, 2018, Plaintiff's Account was transferred from Great Lakes to DMCS, Department of Education's servicer for defaulted loans, for collections purposes. *Id.* at ¶ 11. After the transfer, Plaintiff did not owe any obligations to Great Lakes for his Department of Education-owned loans because Great Lakes was no longer servicing the loans. *Id.* at ¶ 12.

Great Lakes furnishes the "Payment Rating" of an active account to the credit bureaus each month and did so for Plaintiff's Account while servicing it. *Id.* at ¶ 13. A Payment Rating is what a data furnisher uses to tell if an account was current or if it was delinquent, and the length of the delinquency. *Id.* at ¶ 14. At the end of January 2018, after Plaintiff's account was transferred to DMCS, Great Lakes furnished data regarding Plaintiff's Account to the credit bureaus. *Id.* at ¶ 15. In that furnishment of information,

3

Great Lakes furnished the following characteristics about Plaintiff's account to the credit reporting bureaus:

Account Status: 05: Account Transferred

Payment Rating: 6: 180 days or more past due

Date Closed: 1-31-2018

Current Balance: $0.00

Amount Past Due: $0.00

*Id.* at ¶ 16.

On August 21, 2018, Fernandez submitted a dispute to TransUnion regarding the balance and Pay Status reflected on his credit report. *Id.* at ¶ 18. In Plaintiff's August 21, 2018 dispute, he wrote "This account is showing the wrong status. It states that the account is currently past due but it cannot be currently late. The balance clearly shows $0. Further, I think the account was transferred which also means its [sic] impossible for it to be currently late with this creditor." *Id.* at ¶ 19.

Great Lakes received Plaintiff's dispute through an Automated Consumer Dispute Verification ("ACDV") on August 29, 2018, and on September 5, 2018, Great Lakes verified the information it furnished in January of 2018: Great Lakes verified that the "Account Status" was "05: Account transferred," that the "Payment Rating" was "6: 180 days or more past due," the "Date Closed" was "1-31-2018," the "Current Balance" was "$0.00," and the "Amount Past due" was "$0.00." *Id.* at ¶¶ 20-21.

Plaintiff has not applied for any credit from August 2013 until present, claiming that he has not applied for credit because of his negative trade lines and poor credit score. *Id.* at ¶ 22. As of July 30, 2018, Plaintiff's credit report had six satisfactory accounts, and

Plaintiff had a loan charged off in December 2013. JSOF at ¶¶ 23-24. As of July 30, 2018, Plaintiff's TransUnion credit report reflects that he had a vehicle repossessed after a 60-day delinquency, two Department of Education loans in collection, an installment sale contract charged off, and three medical accounts in collection. *Id.* at ¶ 25.

IV.   **DISCUSSION**

Great Lakes argues that it is entitled to summary judgment on Fernandez's claims because it complied with its obligations under the FCRA to furnish accurate data, its investigation of Fernandez's dispute was reasonable, and because Fernandez is unable to prove damages. For the reasons set forth below, Great Lakes' motion for summary judgment will be granted and Fernandez's Complaint will be dismissed.

Congress enacted the FCRA "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union,* 617 F. 3d 688, 707 (3d Cir. 2010). To support these goals, Congress included "provisions intended 'to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information.'" *Id.* [citations omitted.] In *Cortez*, the Third Circuit instructs, "'[t]hese consumer-oriented objectives support a liberal construction of the [FCRA],' and any interpretation of this remedial statute must reflect those objectives." *Id.* [citations omitted.]

As a federal student loan servicer, Great Lakes is required to report the history of all borrower accounts to the national credit reporting agencies. 34 C.F.R. § 685.211. In this regard, Great Lakes acts as a "data furnisher." A data furnisher is an entity that furnishes information regarding a consumer to the credit reporting agencies ("CRA") for

5

inclusion on a consumer's credit report. *Harris v. Pennsylvania Higher Education Assistance Agency*, 696 Fed. App'x. 87, 90 (3d Cir. 2017) (citing 16 C.F.R. § 660.2(c)). 15 U.S.C. § 1681s-2(b) imposes certain duties on a data furnisher who has been notified by a consumer credit reporting agency that a consumer has disputed information furnished by that data furnisher. *See Seamans v. Temple University*, 744 F.3d 853, 864-65 (3d Cir. 2014). Once the data furnisher receives such notice, the data furnisher must:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the [CRA]...;
>
> (C) report the results of the investigation to the [CRA];
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report [the results of the investigation] to all other [CRAs] to which the [furnisher] furnished the [disputed] information ...; and
>
> (E) [modify, delete, or permanently block the reporting of disputed information that the furnisher finds inaccurate, incomplete, or unverifiable after reinvestigation.]

15 U.S.C. § 1681s–2(b)(1).

Section 1681s-2(b) of FCRA allows a consumer to sue a data furnisher if the furnisher provides "incomplete or inaccurate" information to a CRA and then refuses to "delete" or "modify" that information in response to a consumer complaint. 15 U.S.C. § 1681s-2(b)(1). Our Court of Appeals has explained that "[a] report is inaccurate when it is 'patently incorrect' or when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse[ ]' effect." *Schweitzer v. Equifax Info. Solutions LLC*, 441 Fed. Appx. 896, 902 (3d Cir. 2011) (*quoting Dalton v. Capital Assoc. Indus. Inc.*, 257 F.3d 409, 415 (4th Cir. 2001)). In determining whether reported information is misleading, the Court must view the information in a credit report from the perspective of

6

a reasonable creditor. *Horsch v. Wells Fargo Home Mortg.*, 94 F. Supp. 3d 665, 681 (E.D. Pa. 2015).

In the instant matter, Plaintiff alleges that Great Lakes failed to comply with 15 U.S.C. § 1681s-2(b) because it failed to correct the purportedly inaccurate data furnished to the credit reporting bureaus. Compl. at ¶ 20. To that end, Plaintiff alleges that "[t]he status reported on the account falsely stated that the account was currently past due." *Id.* at ¶ 18.

After a thorough review of the caselaw addressing this issue, I find that there is nothing in Plaintiff's credit report that it is "patently incorrect" or "misleading" in such a way and to such an extent that it can be expected to have an "adverse effect" on his creditworthiness. *Schweitzer*, 441 Fed. App'x. at 902.

In *Schweitzer*, the Third Circuit held a CRA accurately represented information in its reports when a mortgage account read "Over 120 Days Past Due," but the "ADDITIONAL INFORMATION" field in the same report showed "Account Paid/Zero Balance." *Schweitzer*, 441 F. App'x at 902. The consumer argued the reporting agency violated the FCRA by stating his mortgage account "had been 'Over 120 Days Past Due'" in two different credit reports. *Id.* The Third Circuit affirmed summary judgment on this entry because the reporting agency "properly reflected" the consumer had paid off the balance of his account. *Id.* at 902. As a result, it was determined that the report did not include inaccurate information. *Id.*

Indeed, district courts both in this Circuit and throughout the country have routinely granted defendants' dispositive motions on plaintiffs' § 1681s-2(b) claims that the reporting of terms of a closed account with zero balance, yet with the pay status listed

as past due is not "patently incorrect" or "misleading." *See, e.g., Ostrander v. Trans Union LLC, et al.*, 2021 WL 3271168 (E.D. Pa. July 30, 2021)(Smith, J.); *Samoura v. Trans Union LLC*, 2021 WL 915723 (E.D. Pa. March 10, 2021)(Kearney, J.); *Parke v. Trans Union, LLC*, No. 20-4487, ECF Doc. No. 32 (Order) (E.D. Pa. March 5, 2021)(Robreno, J.); *Bibbs v. Trans Union LLC*, 2021 WL 695112 (E.D. Pa. February 23, 2021)(Kearney, J.)(rejecting Plaintiff's argument because she was "essentially asking [the Court] to read in non-existing present tense language into the 'Pay Status' field. . ."). *See also, e.g., Gross v. Private National Mortgage Acceptance Co., LLC*, 2021 WL 81465 (E.D.N.Y. Jan. 9, 2021); *Egues v. Nelnet Servicing, LLC, et al.*, 2021 WL 3486904 (D.N.J. Aug. 9, 2021); *Hernandez v TransUnion, LLC*, 2020 WL 8368221 (N.D. Fla. Dec. 10, 2020) (concluding that reporting a "pay status" as "120 days past due" for a closed account with a $0 balance "would not reasonably mislead a creditor to believe [the plaintiff] is currently past due on this loan"); *Settles v. Trans Union, LLC*, 2020 WL 6900302 (M.D. Tenn. Nov 24, 2020) (same); *Euring v. Equifax Information Servs., LLC*, 2020 WL 1508344 (E.D. Mich. Mar. 30, 2020) (finding nothing false or materially misleading about the "monthly payment" information on plaintiff's credit reports in light of the other information that appears on those reports); *Magee v. Ford Motor Credit Company, LLC,* 2019 WL 7593371 (S.D.Miss. November 15, 2019); *Burrow v. Equifax Info. Sys., LLC*, 2019 WL 54417147, at *8-*9, (N.D.Ga., Aug. 5, 2019) adopted report and recommendation 2019 WL 5410067 (N.D.Ga. Aug. 26, 2019); *Jones v. Equifax Info. Servs., LLC*, 2019 WL 5872516 (M.D. Tenn. Aug. 8, 2019) (finding that a credit report showing a monthly payment obligation when the account was closed and had a zero-dollar balance was not materially misleading because "a reasonable prospective lender

would understand [that] the report showed a past obligation only"); *Meeks v. Equifax Information Services, LLC*, 2019 WL 1856411, at *5 (N.D. Ga. March 4, 2019), report and recommendation adopted 2019 WL 1856412 (N.D. Ga. April 23, 2019); *Hunt v. J.P. Morgan Chase Bank, N.A.*, 2018 WL 1183357 (S.D. Fl. February 23, 2018); *Alston v. Equifax Information Services, LLC*, 2014 WL 6388169 (D.Md., November 13, 2014); *Lacey v. Trans Union, LLC, et al*, 2021 WL 2917602 (M.D. Fla. July 12, 2021) (stating that a credit "report must be reviewed and considered in its entirety, instead of focusing on a single field of data.").

Pursuant to the Credit Reporting Resource Guide ("CRRG"), a data furnisher such as Great Lakes that is servicing a transferred account is required to report the "Pay Status" at the time the account is transferred and not on the date of access. Ulzheimer Report, ECF 78-20 at pp. 13-14. As one district court has explained, "[t]he payment rating code, then, is indicative of the status of the paid or closed account **while the account was still active**, not at the time the consumer's credit report is accessed." *Moulton v. Americredit Financial Services, Inc.*, 2006 WL 8459731, at *3 (N.D.Ca. December 29, 2006) (emphasis in original). In addition, all the above cases have found that the tradeline must be viewed in its entirety, rather than simply focusing on a single field such as "Pay Status."

By examining Fernandez's Trans Union credit report as it appeared in July of 2018, a creditor would note that in addition to the "Pay Status" field being marked on the tradeline as "Account 120 Days Past Due Date," the remainder of the tradeline reveals that "Date Closed" was "1/31/2018" and the "Balance" field reads "$0." In addition, the remarks section contains, *inter alia*, the notation "ACCT CLOSED DUE TO

TRANSFER; TRANSFERRED TO ANOTHER OFFICE." Any creditor construing the tradeline in its entirety, as mandated by the prior referenced cases, would clearly realize that Plaintiff's loan with Great Lakes was closed due to transfer and had a remaining balance of $0. The tradeline also provides payment history that clearly shows that Plaintiff became 120 days delinquent on his student loan in May of 2017 and that he remained **at least** 120 days delinquent through the date his account was transferred.

Further, on January 23, 2018, the date Plaintiff's loan was transferred to DMCS**,** Plaintiff's tradeline noted a payment rating of "6- 180 days or more past due," but also that the current balance on his loan was $0.00, the scheduled monthly payment was $0.00, the actual payment amount was $0.00, the amount past due was $0.00, and that the status of the account was "05- account transferred." There is simply nothing in Fernandez's credit report that could be misleading.

Fernandez and his expert, Evan Hendricks, argue that the "Pay Status" field of the credit report should be read in the present tense and is, in fact, a "current pay status." It is indisputable that the word "current" does not appear anywhere in Plaintiff's Great Lakes tradeline. However, Plaintiff asserts that "Hendricks rendered an opinion that GL's credit reporting is inaccurately reporting Mr. Fernandez 'with the **current** 'Pay Status' of 'Account 120 Days Past Due,' when this information is not and cannot be accurate." *See* ECF No. 84 pp, 6-7 (emphasis in original). Plaintiff goes on to argue that "GL continued to report an inaccurate Payment Rating which caused Mr. Fernandez's GL entry to be portrayed as **currently late**, as a result of an unreasonable investigation." *Id* (emphasis in original).

10

I find this argument to be unpersuasive. It is undisputed that the Great Lakes tradeline does not say "current" in reference to the Account Status. Plaintiff's expert admitted as much at his own deposition. ECF No. 77, Ex. B, pp. 88-89. Rather, if the Pay Status field represented a "current" pay status as claimed by Fernandez and showed that his account was not past due because of the transfer of his account, that representation itself would be misleading. Reading the pay status field as a current pay status filed would imply that Fernandez satisfied his loan obligations when he in fact never made a payment and instead defaulted. Plaintiff is extremely fortunate that the "Balance" field reads "$0.00" instead of the total amount owed at the time of transfer and that the tradeline lists his account as closed given the undisputed fact that he never made a single payment on his loan. Fernandez's expert cannot manufacture a genuine issue of fact in this matter when it is clear from a reading of the tradeline that the account status field does not purport to be the **current** status of the debt, but rather the status at the time the debt was transferred.

> To add further clarity to the matter, Great Lakes' expert opined:
>
> Great Lakes credit reported the Plaintiff's defaulted student loan in compliance with industry standards as per CRRG guidance regarding how to report accounts that were transferred while delinquent. The Plaintiff's loan was, in fact, at least 180 days past due/late when Great Lakes transferred the loan back to the United States Department of Education.
>
> Per CRRG guidance going back to at least 2009, an account that has been transferred internally or to a servicer is to be reported with a zero balance and with an Account Status Code that specifies the status of the account AT THE TIME OF TRANSFER (emphasis in original).
>
> When the subject Great Lakes account was transferred it was, in fact, 180+ days past due. Simply put and pursuant to long standing industry guidelines Great Lakes properly reported the Account Status as being 180 days past due as of January 2018.

11

> The status of an account or, formally, the Account Status is a Metro-2 field representing the condition of an account as of the Date of Account Information. It does not and is not intended to represent the condition of an account as of the current date. In fact, Great Lakes had not reported the Plaintiff as being currently delinquent on his loan since December of 2017, when he was currently at least 180 days delinquent at the time.

ECF 78-20 at pp. 14-15. Clearly, there is no support for Plaintiff's argument that the Account Status section is a **current** status and therefore, materially misleading in this situation.

Fernandez sets forth several cases that he argues are on point with the instant set of facts and would require this Court to deny Defendant's motion. However, upon a thorough review of those cases, all are distinguishable from the instant matter.

First, Plaintiff cites to *Daugherty v. Ocwen Loan Servicing, LLC,* 701 F. App'x 246 (4th Cir. 2017), for the proposition that it is inaccurate to "report historical information within the current pay status field." ECF No. 84, p. 9. First, there is no "current pay status field" on Plaintiff's credit report; rather, it is a Pay Status field. Fernandez attempts to create a "current" pay status field where none exists. Next, *Daugherty* is clearly distinguishable from the instant case, as the *Daugherty* plaintiff fell behind on his mortgage and had foreclosure proceedings initiated against him by the loan servicer, but then cured the delinquency, averted foreclosure, brought the loan back into "good standing." 701 F. App'x at 256-57. Unlike the *Daugherty* plaintiff, Fernandez's student loan was never brought back into good standing, as he never made a single payment to Great Lakes.

Fernandez also cites to *Macik v. JPMorgan Chase Bank, N.A.*, 2015 WL 12999728 (S.D. Tex. May 28, 2015), for the proposition that "another court and jury addressed this exact issue and found the pay status data field represents the current status

of the report as opposed to historical information." ECF No. 84, p. 9. Again, this case is distinguishable from the instant facts because the *Macik* plaintiff's "report listed a mortgage account as '90 days past due' even though the plaintiff had 'paid off the mortgage in its entirety." 2015 WL 12999728. The *Macik* plaintiff had indeed paid off his mortgage, unlike Fernandez, who never made a single payment on his loan.

Similarly, *Gardier v. Trans Union, LLC, et al.*, No. 2:20-cv-5232 (E.D. Pa. April 16, 2021), *Smith v. Trans Union, LLC et al.*, No. 2:20-cv-4903 (E.D. Pa. Mar. 19, 2021) and *Barrow v. Trans Union, LLC*, No. 2:20-cv-3628 (E.D. Pa. April 13, 2021) all involved plaintiffs who had fully satisfied their accounts. In this matter, there is no dispute that Fernandez's loan defaulted for nonpayment and remained unsatisfied at the time of transfer, so those cases are easily distinguishable from the instant matter.

Lastly, Fernandez cites to *Myers v. American Education Services*, 2021 WL 859538 (S.D. Ohio Mar. 3, 2021), for the proposition that creditors cannot report "historical information" in the "current status" field. ECF No. 84, p. 11. *Myers* has a somewhat complicated fact pattern and involved a plaintiff who fell delinquent on her student loan owned by Wells Fargo and serviced by AES. *Myers*, 2021 WL 859358, at *1. AES transferred the student loan back to Wells Fargo, and two years later, Wells Fargo discharged the student loan in exchange for payment in an amount less than the full balance of the loan. *Id.* The *Myers* plaintiff later disputed the data furnished by AES; in response, AES inexplicably updated the correctly furnished $0 balance data to reflect an incorrect balance of $15,841 that was past due. *Id.* at *2. AES only corrected the balance and past due status after Plaintiff filed a second dispute and after Plaintiff had "been initially denied a loan." *Id. Myers* is distinguishable from the instant matter because Great

13

Lakes never furnished or verified inaccurate data, unlike AES, who incorrectly reported a past due balance.

While Fernandez argues that questions about inaccurate or misleading quality of information are for the jury, the material facts are not in dispute. After construing those facts in the light most favorable to Plaintiff and drawing all inferences in his favor and construing the FCRA liberally in order to protect consumers such as Plaintiff, the Court concludes as a matter of law that Great Lakes complied with its obligations under 15 U.S.C. § 1681s–2(b)(1) and that the reported information is neither inaccurate nor misleading. Accordingly, Great Lakes' motion will be granted, and Plaintiff's Complaint will be dismissed.[2]

## V.     CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted and Fernandez's Complaint is dismissed. An appropriate order follows.

---

[2] As I have found that Great Lakes did not furnish inaccurate or misleading data, I do not need to address its remaining arguments for summary judgment.